BENJAMIN G. BOARDMAN *vs.* WILLIAM B. SPOONER & others.

The acceptance in Massachusetts of a bill of goods which are in a warehouse in New York with an order on the warehouseman for their delivery, without notice to him, is not an acceptance or receipt of the goods, which will take the sale out of the operation of the statute of frauds.

If on the trial of an action to recover the price of goods sold and delivered the purchaser produces, on notice, the vendor's bill of sale of the goods, bearing the purchaser's name stamped thereon with a press, and there is no evidence to show when or under what circumstances it was so stamped, this is not sufficient proof to authorize the jury to find a note or memorandum in writing of the bargain, made and signed by the purchaser.

If by the terms of an oral contract goods sold are subject to the purchaser's approval, a broker's note in writing of the sale which omits that portion of the oral contract is inadmissible to take the case out of the statute of frauds; nor, in such case, can the vendor be allowed to prove that by a usage of trade the goods are to be examined within a limited time, and if not examined and objected to within that time the sale is deemed complete.

CONTRACT brought to recover for five bales of dead green hides and one bale of dry hides, weighing in all 4986 pounds, at seventeen cents a pound, $847.62, and interest. The answer denied the purchase, and set up that the alleged sale was void by the statute of frauds.

At the trial in the superior court, before *Vose*, J., it appeared that on the 9th of September 1865 William C. Morey, a broker in hides and goat-skins, bargained with the plaintiff for the purchase from him of the hides in question at seventeen cents a pound, and took from him a memorandum of the weights, and told the plaintiff to charge the hides to the defendants; he not having instructions at that time to make any purchase for them. Immediately afterwards Morey sent his brother Charles H. Morey, with the memorandum of weights, to Mr. Butler, one of the

defendants, to inform him that he could have the hides of the plaintiff at seventeen cents a pound. Charles accordingly went and delivered the message. Butler asked who should be the judge of the quality. Charles replied, " Mr. Butler." Butler said, if that was so, he would take them. Charles returned to his brother's office, and there, by direction of his brother and in his presence, made the following entry in his brother's book : " Boston, September 9, 1865. Sold Wm. B. Spooner & Co. acc. B. G. Boardman, 5 bales D. G. cow hides, 1 bale dry do. @ 17c pr lb. net cash delivered in N. Y."

On the same day, the plaintiff sent a bill of the hides, with an order for their delivery, to the broker, who sent them to Butler. The hides were then in the warehouse of a general warehouseman in the city of New York, and the order was on the storekeeper, as follows : " Boston, Sept. 9, 1865. Please deliver the bearer four bales marked H. J. B. and two bales no. 24 & 50 of Tucker, Carter & Co. invoice, & oblige B. G. Boardman, by E. M. Dennie. To Storekeeper, Coe's Wharf, N. Y." The bill was as follows : " Boston, Sept. 9th 1865. Mess. Wm. B. Spooner & Co. Bought of W. G. Boardman, 133 Milk St. Cash delivered in N. Y. 6 bales D. G. & dry Patnas, 5028 lbs. less tare, 42, 4986 lbs, 17, $847.62," together with figures showing the weight of each bale.

Nothing further passed between the plaintiff and defendants until after September 18th 1865, when the warehouse in New York, and the hides, were destroyed by fire. There was no evidence whether the storekeeper had or had not been informed of the existence of the order upon him, or whether the defendants had made any demand upon him for the hides. These six bales were all the hides belonging to the plaintiff in that warehouse, and were of prime quality, and the weights were correct. The memorandum of weights, the delivery order and the bill were produced by the defendants at the trial, on notice from the plaintiff; and when so produced the memorandum of weights and the bill were stamped with the name of the defendants' firm, with a machine. It did not appear when or for what purpose they were so stamped.

William C. Morey testified as follows : " In the ordinary way in which we sell hides situated in New York, it is expected that the purchaser will either go himself or have some agent there to see if the quality is satisfactory. I believe it is a well settled custom in our trade that three days are allowed for the examination of goods, and three days' grace allowed for the payment of the bill, unless there is some express stipulation to the contrary." " The sale in this case was no exception to the general rule." " Goods are always sold subject to approval of purchaser, or of public inspector. There is no public inspector of this kind of hides."

The judge ruled that this evidence, which was introduced by the plaintiff, was insufficient to take the case out of the statute of frauds, and directed a verdict for the defendants; and the plaintiff alleged exceptions.

*J. D. Ball,* for the plaintiff. There was a sufficient acceptance and receipt of the hides by the defendants, by their acceptance of the bill and order for their delivery. *Searle* v. *Keeves,* 2 Esp. R. 598. *Lackington* v. *Atherton,* 7 Man. & Gr. 360. *Lucas* v. *Dorrien,* 8 Taunt. 278. *Hollingsworth* v. *Napier,* 3 Caines R. 182. *Wilkes* v. *Ferris,* 5 Johns. 335, 344. *Pratt* v. *Parkman,* 24 Pick. 46. *Whipple* v. *Thayer,* 16 Pick. 25. *Carter* v. *Willard,* 19 Pick. 1. *De Wolf* v. *Gardner,* 12 Cush. 19. *Gibson* v. *Stevens,* 8 How. 384, 397. Nothing further remained to be done by the plaintiff. No assent on the part of the warehouseman, who was a mere bailee, was necessary. The defendants' silence till after the fire shows an acceptance. *Bushel* v. *Wheeler,* 15 Q. B. 442. Slight evidence of delivery is sufficient. *Stinson* v. *Clark,* 6 Allen. 340. There need not be such an acceptance as would preclude subsequent objections to the quality. *Morton* v. *Tibbett,* 15 Q. B. 428. *Richmond Iron Works* v. *Woodruff,* 8 Gray, 447. In this case, the hides were of prime quality ; and by the terms of the sale Butler could not make a groundless objection to them.

The note or memorandum in writing was sufficient to satisfy the statute of frauds. The broker was the agent of the defendants, and an entry by him in his book is sufficient. And it is

not necessary that all the particulars of the bargain should appear in the writing. *Salmon Falls Manuf. Co.* v. *Goddard*, 14 How. 446. There was no warranty that the hides were of good quality; and therefore no mention of the quality in the memorandum was necessary. The memorandum was complete without it. The most that can be contended is, that the contract was not to take effect in case the hides were found by Butler not to be good. The memorandum remained in the broker's hands. When Butler had neglected for over three days to examine the hides, then the memorandum took full effect, and was as complete as if there had been no condition whatever. The evidence of the usage of trade was admissible. Persons engaged in particular branches of trade are presumed to contract with reference to such usages. See *Clark* v. *Baker*, 11 Met. 186. *Casco Manuf. Co.* v. *Dixon*, 3 Cush. 407. *Fisher* v. *Sargent*, 10 Cush. 250; *Warren Bank* v. *Parker*, 8 Gray, 221. The usage shown in the present case contravenes no rule of law, and is reasonable. *Syers* v. *Jonas*, 2 Exch. 111.

Stamping the bill with the defendants' stamp was a sufficient note or memorandum in writing. *Johnson* v. *Dodgson*, 2 M. & W. 653, 659, 660. *Saunderson* v. *Jackson*, 3 Esp. R. 180. *Schneider* v. *Norris*, 2 M. & S. 286.

*F. E. Parker*, for the defendants. The receipt of the bill of parcels and order for delivery of goods was not such an acceptance as will take the sale out of the statute of frauds. *Carter* v. *Willard*, 19 Pick. 1. *Bentall* v. *Burn*, 3 B. & C. 423. *Farina* v. *Home*, 16 M. & W. 119. *Tuxworth* v. *Moore*, 9 Pick. 347. *Burge* v. *Cone*, 6 Allen, 412. The broker's note was not a sufficient memorandum in writing, because not signed by himself, but by his clerk. See *Coddington* v. *Goddard*, 16 Gray, ; *Henderson* v. *Barnewall*, 1 Y. & Jerv. 387; Story on Agency, §§ 29, 109; Browne on St. of Frauds, § 370. It was also insufficient in substance. *Coddington* v. *Goddard*, above cited. *Morton* v. *Tibbett*, 15 Q. B. 428. Browne on St. of Frauds, § 371. The usage, if proved, is a bad usage. *Dodd* v. *Farlow*, 11 Allen, 426, and cases there cited.

FOSTER, J.    The first ground upon which the plaintiff relies to satisfy the requirements of the statute of frauds, Gen. Sts. c. 105, § 5, is, that the purchaser has accepted and received part of the goods sold.    The only act proved tending to support this proposition is the following : On the day of the contract a bill of the hides, which were in a general warehouse in New York and deliverable there, was made out to the defendants, together with an order to deliver them to the bearer, and the plaintiff sent these papers to the broker, who on the same day handed them to one of the defendants.    The defendants are not shown to have done anything except to take and keep the bill and order. Nor does it appear that any notice of the transaction was given to the warehouseman.

The statute is silent as to the delivery of goods sold, which is the act of the seller.    It requires the acceptance and receipt of some part thereof, which are subsequent acts of the buyer.    We are aware of no authority for holding this provision to be complied with where nothing more appears to have taken place than in the present instance.    When goods are in the custody of a third person, an order for their delivery, with notice to that person, (but never without such notice in this state,) has been decided to be sufficient to pass the property as against attaching creditors of the vendor.    *Tuxworth* v. *Moore*, 9 Pick. 347.    *Carter* v. *Willard*, 19 Pick. 1.    *Burge* v. *Cone*, 6 Allen, 412.    But some well considered English cases hold that to constitute acceptance and receipt under the statute of frauds there must also be an assent by the party in whose custody the goods are, to hold them for the vendee.    *Bentall* v. *Burn*, 3 B. & C. 423.    *Farina* v. *Home*, 16 M. & W. 119.    In the present case, there was no evidence from which a jury would be authorized to infer an acceptance and receipt by the purchaser.

Next, the plaintiff insists that there was a note or memorandum in writing of the bargain, made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized.    The vendor's bill of sale, or of parcels, unsigned by the vendee, who is the party to be charged, does not, of course, bind the latter.    *Hawkins* v. *Chace*, 19 Pick. 502.

The stamping of the purchasers' name and a date on the bill and memorandum of weights at some time while these papers were in their possession, without evidence when or for what purpose this was done, did not show that they had adopted such a stamp as a signature, and affixed it to the instruments with the intent to bind themselves thereby. This may have been done for their own convenience, to show the date of the reception of the papers. If designed as the signature of a memorandum, obligatory on the vendees, we should expect to find the papers in the custody of the party for whose benefit, and not of the one by whom, they were signed. We do not regard the mere fact that, when these papers were produced at the trial by the defendants, they were found to be so stamped, as a circumstance which either a court or jury would be at liberty to treat as proof of a signature by the party to be charged.

We have therefore to consider the sufficiency of the entry of the transaction upon the broker's book. This is not aided by the contents of the memorandum of weights, because the two instruments contain no reference to each other, and the connection between them cannot be proved by oral evidence, if there were any such in the case. *Morton* v. *Dean,* 13 Met. 385.

In the conversation between the broker's clerk and Mr. Butler, one of the defendants, relied upon to prove the verbal bargain, the latter asked who should be the judge of the quality ; the clerk replied, " Mr. Butler." Butler then said, if that was so he would take the hides. This stipulation is wholly omitted from the entry on the broker's book, which contains no statement as to the quality of the hides. By the true construction of the writing, the contract of the defendants was absolute, to purchase the hides if they answered the description and were " five bales dead green and one bale dry." This was an engagement essentially different from the one actually made, according to which Butler or the firm were to judge of the quality ; which would be a conditional bargain to take the hides if, upon examination by the vendees or one of them, the quality proved satisfactory, or so good that it ought reasonably to be satisfactory

to the purchasers. The latter interpretation, if adopted, would not destroy the value of the purchasers' right of examination, and to judge in the first instance of the quality. The omission of the condition that the purchase was subject to the approval of the vendees as to the quality constitutes a material variance between the contract as made and as written down in the broker's book.

The plaintiff has endeavored to obviate this difficulty by proving a usage, the evidence of which came from only one witness, and was as follows: " In the ordinary way in which we sell hides situated in New York, it is expected that the purchaser will either go himself or have some agent there to see if the quality is satisfactory. :. . . . Goods are always sold subject to approval of purchaser or of public inspector. There is no public inspector of this kind of hides."

It has been considered to be a rule of law that the testimony of a single witness is insufficient to establish a usage of trade. *Parrott* v. *Thacher*, 9 Pick. 426. 1 Greenl. Ev. § 260 *a.* And it is well settled that a usage repugnant to the terms of a contract is inadmissible to control it. Nor can a usage of trade be maintained which engrafts on a contract of sale a stipulation or obligation different from or inconsistent with the rule of the common law on the subject. Thus, a usage that in sales by sample there is an implied warranty against latent defects existing in both the sample and the bulk is illegal. *Dickinson* v. *Gay*, 7 Allen, 34. So likewise is a usage that in sales of a particular kind of merchandise there is an implied warranty of its merchantable quality; and that a broker without express authority may insert such a stipulation in his memorandum of the bargain. *Dodd* v. *Farlow*, 11 Allen, 426.

If the purchasers had themselves signed a contract to buy five bales of dead green and one bale of dry hides, they could not be permitted to show that they were bound to receive them only in case, upon examination by themselves they were in their judgment of good quality either by proving an express oral stipulation or a usage of trade to tnat effect. Indeed, it is difficult to see how any stipulation can be engrafted on a written

instrument by proof of usage, which could not be shown as an actual contemporaneous verbal agreement of the parties. In either case the insuperable difficulty is that the oral evidence is repugnant to the written instrument. And that objection we consider applicable to the usage of which evidence was offered at the trial of the present case.

Furthermore the supposed usage is contrary to the rule of law, that in a contract of sale there is no implied warranty or stipulation as to the quality of the goods. A usage that the goods shall be of such a quality as to be approved by the buyer or a public inspector is assuredly an implied warranty or stipulation as to quality. *Dodd* v. *Farlow* is undistinguishable in principle, although the facts in that case are the converse of those in this. There, the broker without authority inserted a stipulation that the articles should be of merchantable quality and in good order; here, an agreement as to quality actually made was omitted in the broker's entry of the bargain. In the case already adjudged the effort was to justify the insertion of a stipulation not made by proof of usage; in that under consideration, the agreement as to quality having been actually made in the oral bargain, proof of usage, according to which it would be implied, is invoked to supply its omisson from the memorandum Each defect is alike fatal and incapable of being cured by any custom of trade.

*Syers* v. *Jonas*, 2 Exch. 111, decided in 1848, is much relied upon by the plaintiff as an authority in conflict with this view. That was an action for the price of tobacco. The plea was *non assumpsit*. The plaintiff proved a bargain through a broker who had made the bought and sold notes. The defendant offered to show that the bulk was inferior to the sample, and that, by the universal usage of the tobacco trade, all sales were understood to be by sample, though not mentioned to be so in the contract. The question was, whether this was a customary incident of the bargain which could be proved by oral evidence. It was held not to be expressly or impliedly excluded by the tenor of the written instrument; the usage was treated as annexing an additional term to the contract, not inconsistent with it, although

amounting to an implied warranty or agreement that the bulk should correspond with the sample. In the opinion of the court, *Street* v. *Blay*, 2 B. & Ad. 456, was cited as to the nature of a warranty, and the same eminent judge by whom it was delivered, Baron Parke, at the argument, spoke of the words by sample "as a mere collateral engagement on the part of the seller that the commodity shall be of a particular quality;" and added, "If they merely amount to a warranty, and not a condition of sale, there would be nothing inconsistent with the contract in admitting evidence of the usage." We have great difficulty in comprehending how anything can be considered as a memorandum of a bargain which omits a warranty of the quality of the article sold. The omission of such a warranty was held a fatal defect under the statute of frauds in *Peltier* v. *Collins*, 3 Wend. 459.

That a contemporaneous agreement of warranty cannot be engrafted by oral evidence on a written instrument is well settled in this state. *Warren* v. *Wheeler*, 8 Met. 97. *Dutton* v. *Gerrish*, 9 Cush. 89. *Raymond* v. *Raymond*, 10 Cush. 134. *Howe* v. *Walker*, 4 Gray, 318. Moreover, in Massachusetts the doctrine of *Street* v. *Blay* has never been adopted. We hold, in accordance with the earlier English cases, that where goods are sold with warranty, for a breach thereof the purchaser may return the goods and rescind the sale; such a warranty being treated as a condition subsequent, at the election of the vendee. *Bryant* v. *Isburgh*, 13 Gray, 607. Now it is conceded in *Syers* v. *Jonas*, and held, we believe, universally, that all conditions or essential terms of the bargain must appear in the memorandum. *Davis* v. *Shields*. 26 Wend. 341. The recent case of *McLean* v. *Nicolle*, 4 Law Times, (N. S.) 863, decided in 1861, held a written acknowledgment of an oral bargain to be defective, which omitted the stipulation that the looking-glass purchased was to be of the best quality. Certainly the agreement, in the present case, that Mr. Butler should be the judge of the quality of the hides, is a condition of the bargain rather than a collateral undertaking, as much as the term omitted in *McLean* v. *Nicolle*. Upon principle and authority we remain fully satisfied

with *Dodd* v. *Farlow*, which must be regarded as the settled law of this commonwealth.

Another conclusive answer may be stated to the position that the broker's memorandum aided by the proof of usage is identical with the oral contract, and therefore satisfies the statute of frauds. The supposed usage as proved is not equivalent to the verbal stipulation. A usage that goods are always sold subject to the approval of a purchaser or of a public inspector, coupled with proof that there is no public inspector of a particular kind of merchandise, seems to us to show that the usage does not apply to such cases. The meaning of such a usage is, that if the purchaser does not approve the quality of the goods, there may be an appeal to the judgment of the inspector, who is to decide between the parties the question of quality. If there is no inspector, it cannot be optional with the purchaser to keep his contract or not. A usage that, if there is no public inspector, buyers may break their bargains at pleasure is too unreasonable to be maintained, if not too absurd to be suggested.

Upon full consideration, we conclude that the entry in the broker's book is insufficient, because it fails to correspond with, and omits an essential portion of, the actual bargain of the parties. We need not therefore examine the question whether an entry by a broker's clerk, sufficient in substance, would comply with the statute of frauds. The ruling of the court below that the defendants were entitled to a verdict is sustained, and the exceptions are overruled.